IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY WIGENTON | § | |
| (TDCJ No. 1918606), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-1313-P-BN |
| | § | |
| DALLAS COUNTY SHERIFF | § | |
| DEP'T, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b) for screening. The undersigned now enters the following findings of fact, conclusions of law, and recommendation.

**Background**

Plaintiff Larry Wigenton, a Texas inmate, proceeding *pro se*, originally brought this civil rights action against the Dallas County Sheriff's Department; Parkland Hospital; and Pamela Segurra-Muhammad, an attorney. *See* Dkt. No. 3. The Court sent written interrogatories to Plaintiff to obtain additional information about the factual basis of this suit. *See* Dkt. No. 12. Plaintiff answered the interrogatories on September 1, 2014. *See* Dkt. No. 15. The Court sent supplemental interrogatories to Plaintiff on October 6, 2014, *see* Dkt. No. 18, and Plaintiff answered those interrogatories on November 4, 2014, *see* Dkt. No. 19.

Plaintiff states that, on December 11, 2013, as part of the intake process at the Dallas County Jail, he was restricted to a bottom bunk by Head Intake Nurse Chairish and that this restriction is in his medical file. *See* Dkt. No. 15 at 5-7.

On March 18, 2014, Plaintiff was injured when, in climbing up to a top bunk at the jail, he slipped and fell. *See id.* at 1. Plaintiff also alleges that loss of mobility in his left arm – because of muscle and nerve damage from a gunshot wound – caused him to fall from the top bunk. *See id.* at 2. Plaintiff states that he landed on his back, hit the back of his head on the floor, and suffered nerve pain in his already damaged left arm. *See id.* at 3.

Plaintiff alleges he was assigned to a top bunk – on the same day that he was injured – even though he alleges that he told Officer Dixon he was "bottom bunk restricted." *See* Dkt. No. 19 at 2, 4. Plaintiff states that he was told to sleep on the top bunk or that he would be "written up." *See id.* at 2.

Plaintiff states the jail sent him to Parkland Hospital, in Dallas, where x-rays were taken and he was given pain medication and told to "come back if [his] back continued to hurt." *See* Dkt. No. 15 at 4, 8; Dkt. No. 19 at 5. Although Plaintiff named Parkland as a defendant, *see* Dkt. No. 3 at 3-4, he has clarified that "Parkland Hospital did not violate my civil rights," Dkt. No. 15 at 8.

Unrelated to his purported injury on March 18, 2014, Plaintiff also sues Assistant Dallas County Public Defender Pamela Segura-Muhammad. *See* Dkt. No. 3 at 3-4. Plaintiff claims that Ms. Segura-Muhammad violated his due process rights and provided ineffective assistance of counsel. *See id.*; Dkt. No. 15 at 9.

The undersigned now concludes that Plaintiff's claims against Parkland Hospital and Ms. Segura-Muhammad and any claim against the Dallas County Sheriff's Department as an entity should be summarily dismissed. For purposes of screening, however, Plaintiff has alleged a claim of deliberate indifference against Officer Dixon at the Dallas County Jail. He should be allowed to amend his complaint to name Officer Dixon as a defendant in place of the Dallas County Sheriff's Department, *see, e.g., Johnson v. Dallas Police Dep't*, No. 3:13-cv-4537-D, 2014 WL 309195, at *2 n.2 (N.D. Tex. Jan. 28, 2014) ("*Pro se* plaintiffs who name a non jural entity as a defendant should be alerted and given an opportunity to amend before dismissal of the action." (citing *Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1026 (5th Cir. 1993)), and Officer Dixon should be served by the United States Marshal pursuant to Federal Rule of Civil Procedure 4(c)(3).

## Legal Standards

A district court is required to screen a civil action brought by a prisoner, whether he or she is incarcerated or, instead, detained prior to trial, seeking relief from a governmental entity or employee. *See* 28 U.S.C. § 1915A(a), (c). On initial screening, the Court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, that:

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

*Id.* § 1915A(b). Analogously, pursuant to Section 1915(e)(2)(B), a district court may

summarily dismiss any complaint filed *in forma pauperis* – not limited to complaints filed by prisoners seeking relief from a governmental entity or employee – for the same reasons.

An action is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law."). A complaint is without an arguable basis in law if it is grounded upon an untenable, discredited, or indisputably meritless legal theory, including alleged violations of a legal interest that clearly does not exist. *See Neitzke*, 490 U.S. at 326-27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss," under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

Although a court generally cannot look beyond the pleadings in determining whether claims should be dismissed, the pleadings here include Plaintiff's responses to the Court's interrogatories, *see* Dkt. Nos. 15 and 19, which "become part of a plaintiff's pleadings," *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)).

## Analysis

### Parkland Hospital

Plaintiff's civil rights claims against Parkland Hospital should be summarily

dismissed. Plaintiff admits that "Parkland Hospital did not violate [his] civil rights." Dkt. No. 15 at 8. Indeed, the facts concerning Parkland that Plaintiff alleges show that he was treated promptly and appropriately. *See* Dkt. No. 15 at 4, 8; Dkt. No. 19 at 5. And nothing Plaintiff alleges comes close to showing that Parkland acted with deliberate indifference by engaging in "conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (such as refusing to treat, ignoring complaints, or intentionally treating incorrectly).

Defense Attorney Segura-Muhammad

Plaintiff's civil rights claims against his defense attorney also should be summarily dismissed. Public defenders and private attorneys are not "state actors" and cannot be sued under 42 U.S.C. § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("[P]rivate attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983.").

Dallas County Sheriff's Department

Similarly, Plaintiff's civil rights claims against the Dallas County Sheriff's Department should be summarily dismissed because this defendant is not a jural entity subject to suit under Section 1983. *See, e.g.*, *Johnson v. Dallas Cnty. Sheriff Dep't*, Civil Action No. 3:08-cv-423-G, 2008 WL 2378269, at *3 (N.D. Tex. June 6, 2008)

("The Dallas County Sheriff's Department is not a jural entity that can be sued." (citing *Magnett v. Dallas Cnty. Sheriff's Dep't*, No. 3:96-cv-3191-BD, 1998 WL 51355, at *1 (N.D. Tex. Jan. 20, 1998))); *accord Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (absent authorization by a Texas city, a plaintiff "no more can proceed against [its] police department alone than [he] could against the accounting department of a corporation").

Officer Dixon

Plaintiff's civil rights claims against Officer Dixon at the Dallas County Jail should be allowed to proceed as a claim of deliberate indifference under the Eighth Amendment.

Deliberate indifference to serious medical needs constitutes cruel and unusual punishment, and, to establish a violation of the Eighth Amendment's deliberate indifferent standard, a plaintiff must show that officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This, in turn, requires proof that a state actor "knew of and disregarded an excessive risk of inmate health or safety." *Brown v. Bolin*, 500 F. App'x 309, 314 (5th Cir. Dec. 12, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648-49 (5th Cir. 1996)). The state actor "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 at 837.

In cases addressing bunk assignment claims similar to Plaintiff's, courts have

allowed such claims to proceed under a deliberate indifference theory if a plaintiff alleges (1) that his assignment to a lower bunk was medically necessary and (2) that an identified state actor actually knew plaintiff faced a serious risk of harm from being in an upper bunk. *Compare Howard v. Lipkowitz*, No. C 02-1821 MMC (PR), 2002 WL 1483823, at *1 (N.D. Cal. July 1, 2002) (claim dismissed where plaintiff failed to allege that he was assigned to a lower bunk by a medical professional and "[t]here [was] no allegation or indication that plaintiff had previously injured his back due to being in an upper bunk, let alone that defendant was aware of any such incident"), *and Enlow v. Beard*, Civil Action No. 11-856, 2012 WL 1579498, at *3 (W.D. Pa. Apr. 2, 2012) (claim dismissed where plaintiff merely alleged medical professional ignored his inmate request slip concerning being moved from a bottom bunk to a top bunk, but plaintiff failed to allege that medical professional "actually received the request slip and intentionally ignored it or was in any way aware of [the] situation involving the transfer of bunk status"), *with Lewis v. Endell*, No. 2:08-cv-00157-RLH-PAL, 2008 WL 4866316, at *5 (D. Nev. Nov. 7, 2008) (claim allowed to proceed where plaintiff alleged state actors "assigned him to an upper bunk ... even though they knew he suffered from seizures" and that "he was severely injured when he suffered a seizure and fell from the top bunk"), *and Christophel v. Husz*, No. 08-C-935, 2009 WL 995753, at *2 (E.D. Wis. Apr. 14, 2009) (plaintiff granted leave to amend his complaint to name a specific correctional officer where he alleged he "informed a correctional officer about the low bunk restriction but then the officer gave the low bunk to another inmate" and that he "subsequently fell five feet from the upper bunk to the floor injuring his head and

back").

Here, Plaintiff alleges that medical staff at the jail restricted him to a bottom bunk as part of the intake process on December 11, 2013. *See* Dkt. No. 15 at 5-7. Plaintiff also alleges that Officer Dixon assigned him to a top bunk on March 18, 2014, the same day he fell from the top bunk, despite Plaintiff's telling Officer Dixon he was "bottom bunk restricted." Dkt. No. 19 at 2, 4. Based on these allegations, for purposes of screening, the Court finds that Plaintiff has stated a viable deliberate indifference claim against Officer Dixon. That is, Plaintiff has alleged that Officer Dixon knew of and disregarded an excessive risk to Plaintiff's safety.

## Recommendation

Plaintiff's claims against Parkland Hospital and Ms. Segura-Muhammad and any claim against the Dallas County Sheriff's Department as an entity should be summarily dismissed.

For purposes of screening, Plaintiff has alleged a claim of deliberate indifference against Officer Dixon at the Dallas County Jail. Plaintiff should be allowed to amend his complaint to name Officer Dixon as a defendant, in place of the Dallas County Sheriff's Department, and Officer Dixon should be served by the United States Marshal pursuant to Federal Rule of Civil Procedure 4(c)(3).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 20, 2014

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE