IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY WIGENTON<br>(TDCJ No. 1918606), | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-1313-N-BN |
| | § | |
| DESHON ANTHONY DIXON and | § | |
| SHERI MOORE, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This *pro se* civil rights action filed by Plaintiff Larry Wigenton, now a Texas

inmate, while he was in the custody of the Dallas County Jail (the "Jail"), has been

referred to the undersigned United States magistrate judge for pretrial management

under 28 U.S.C. § 636(b) and an order of reference. *See* Dkt. No. 40.

Defendant Sheri Moore has moved for summary judgment as to her affirmative

defense of qualified immunity. *See* Dkt. Nos. 65 & 66. The Court afforded Wigenton an

opportunity to either file a motion for leave to conduct limited discovery in order to

respond to the qualified-immunity issues raised in Moore's motion or advise the Court

that he does not need to conduct discovery to respond to those issues. *See* Dkt. No. 67.

He did neither. But Wigenton did file a response to the summary judgment motion. *See*

Dkt. No. 69. And Moore has filed a reply brief. *See* Dkt. No. 70.

The undersigned issues the following findings of fact, conclusions of law, and

recommendation that the Court should grant the motion for summary judgment as to Moore's qualified immunity defense and dismiss with prejudice the claims against her, as well as the remaining claims and this action.

### Applicable Background

On January 9, 2015, the Court dismissed on initial screening multiple claims asserted by Wigenton but allowed to proceed his claims for deliberate indifference, in violation of the Eighth Amendment, against two Jail employees – a detention service officer (later identified as Officer Dixon) and a nurse (later identified as Moore). *See Wigenton v. Dixon*, No. 3:14-cv-1313-P-BN, 2015 WL 136126 (N.D. Tex. Jan. 9, 2015); *see also* Dkt. Nos. 3, 15, & 19.

The deliberate-indifference claims arise from allegations that in March 2014 Wigenton was injured when, while climbing up to a top bunk at the Jail, he slipped and fell. *See* Dkt. No. 15 at 1; *see also id.* at 5-7 (explaining that on December 11, 2013, as part of the intake process at the Jail, Wigenton was restricted to a bottom bunk). Wigenton asserts that loss of mobility in his left arm, because of muscle and nerve damage from a gunshot wound, caused him to fall from the top bunk, *see id.* at 2, and further states that he landed on his back, hit the back of his head on the floor, and suffered nerve pain in his already damaged left arm, *see id.* at 3.

Wigenton alleges that Dixon "ordered [him] to move from his bottom bunk to a top bunk. When [Wigeton] told [Dixon] he was bottom bunk restricted for medical purposes due to his injuries, [Dixon] told [him] that if he refused to move," Wigenton

"would receive disciplinary action, 'written up.'" Dkt. No. 23 at 2. According to Wigenton, after he fell, Defendants Dixon and Moore "left [him] laying on the floor for several hours, unable to move, until the next shift [came] on duty. It was only then that an ambulance was called for and [he] was rushed to Parkland Hospital." *Id.* at 3.

Service difficulties, which plagued this matter after the Court accepted the findings, conclusions, and recommendation on screening, *see* Dkt. Nos. 28, 31, 32, 38, & 39, led the Court to request that the Dallas County Sheriff's Office prepare a report on Wigenton's remaining claims under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), *see* Dkt. Nos. 31 & 41.[1]

After that report was submitted, *see* Dkt. No. 42, Wigenton moved to amend his complaint to correct the name of the nurse identified as a defendant, *see* Dkt. No. 49 at 2 ("Evidence contained in the 'Martinez Report' ... shows that Nurse, Sheri Moore and Defendant, Deshon Dixon evaluated Plaintiff while he was lying motionless on the floor in great pain, then they turned their backs on Plaintiff without providing any medical assistance, punched out on the time clock, and went home. Leaving Plaintiff lying on the floor.... Plaintiff respectfully prays that the Court ... change the record to reflect that the name of the Defendant, Nurse Charish be changed to Nurse, Sheri Moore."). The Court granted leave to amend and ordered that the complaint as

---

[1] *See also Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam) (noting that a *Martinez* report, like an evidentiary hearing held under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), is "a tool" "adopted" by the United States Court of Appeals for the Fifth Circuit that district courts may use to further develop the factual basis of a prisoner complaint to determine whether *sua sponte* dismissal is appropriate (citation omitted)).

amended be served. *See* Dkt. Nos. 50, 51, 56, & 58.

Moore then answered, *see* Dkt. No. 62, and, as ordered by the Court, *see* Dkt. No. 64, she has moved for summary judgment as to qualified immunity, *see* Dkt. Nos. 65. That motion is supported by documents submitted in compliance with Federal Rule of Civil Procedure 56(c). *See* Dkt. No. 66. Wigenton's response in opposition to summary judgment, however, is not supported by sworn materials. *See* Dkt. No. 69.

While *pro se* litigants "'are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, the Fifth Circuit Court of Appeals has never allowed *pro se* litigants, or any other type of litigants, to oppose summary judgments by the use of unsworn materials.'" *Burroughs v. Shared Housing Ctr.*, No. 3:15-cv-333-N-BN, 2017 WL 876333, at *3 (N.D. Tex. Jan. 31, 2017) (quoting *Rodriguez v. Bexar Cty. Hosp. Dist.*, No. SA-14-CA-861-OG, 2015 WL 7760209, at *20 (W.D. Tex. Nov. 30, 2015) (collecting cases)), *rec. accepted*, 2017 WL 875853 (N.D. Tex. Mar. 3, 2017); *see also Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("Of course, this is not to say that *pro se* plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do." (citation omitted)).

But Wigenton's complaint, his responses to the applicable Court questionnaire, and his first amended complaint are verified. *See* Dkt. Nos. 3, 15, 21, & 23. As such, in considering the motion for summary judgment, the undersigned has credited these materials as "competent summary-judgment evidence." *Leggett v. Lafayette*, 608 F. App'x 187, 190 (5th Cir. 2015) (per curiam) (citing *Ion v. Chevron USA, Inc.*, 731 F.3d

-4-

379, 382 n.2 (5th Cir. 2013); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam)).

## Legal Standards and Analysis

<u>Qualified Immunity Generally</u>

"Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)); *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation marks omitted); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *see also Mullenix*, 136 S. Ct. at 308 ("[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right'"(quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012))).

While review of a motion for summary judgment based on qualified immunity is accomplished in two steps, a court may conduct the required two-step examination in any order. *See Pearson*, 555 U.S. at 236. Regardless of which prong is addressed first, a court must decide "whether the facts, taken in the light most favorable to the

plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) (citing *Tolan*, 134 S. Ct. at 1865; *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)), *reversed on other grounds*, 136 S. Ct. 305 (2015). Put differently, under the first prong, a court simply must decide "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

A court also must decide "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores*, 381 F.3d at 395. This second prong of the analysis requires a court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511. That is, "whether it would have been clear to a reasonable officer in the [defendants'] position that their conduct was unlawful in the situation they confronted." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001); internal quotation marks and brackets omitted from original)).

Resolving Qualified Immunity at Summary Judgment

As soon as a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam); *see Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by

establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))).

"Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). That said, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith'" "'is a 'demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (respectively quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

And the qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays Cty.*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)).

Accordingly, a court's qualified immunity inquiry at the summary judgment stage requires that the court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004); *see, e.g., Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (observing that "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence" and that "sworn testimony at [a] *Spears* hearing was also relevant to the court's summary judgment review" (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003); *Eason v. Holt*, 73 F.3d 600, 602-03 (5th Cir. 1996))); *see also Tolan*, 134 S. Ct. at 1863 ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (observing that "[e]ven in the context of qualified immunity, 'the facts alleged' must be '[t]aken in the light most favorable to the party asserting the injury'" (quoting *Tolan*, 134 S. Ct. at 1865)).

"Although summary judgment may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this has 'nothing to do with the qualified immunity defense.'" *Haverda*, 723 F.3d at 599 (quoting *Barker*, 651 F.2d at 1124)). "[I]mmunity ... [is] an entitlement distinct from the merits of the case." *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010) (citation and quotation marks omitted).

Deliberate Indifference

To establish a constitutional violation under the Eighth Amendment's deliberate

-8-

indifference standard, a plaintiff must show that jail officials acted with deliberate indifference such as to cause the "'unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). This, in turn, requires proof that a state actor was

> "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Therefore, to avoid liability, "[p]rison officials charged with deliberate indifference might show ... that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."

*Hyatt*, 843 F.3d at 177 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 844 (1994)).

"Furthermore, evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate indifference." *Id.* Indeed, "'prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer*, 511 U.S. at 844). In that respect, delays in providing medical care do not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). And an incorrect diagnosis, a disagreement with medical treatment, or a failure to provide additional medical treatment – alone – does not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"A prison official acts with deliberate indifference only if 'he knows that inmates face a substantial risk of serious bodily harm ... [and] disregards that risk by failing to take reasonable measures to abate it.'" *Hyatt*, 843 F.3d at 179 (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *see, e.g., Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish an Eighth Amendment violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

<u>Moore</u>

Here, Wigenton, through his verified first amended complaint [Dkt. No. 23] as further amended to reflect that the nurse defendant who attended to him in March 2014 was Moore, establishes, as to Moore, that she responded after Wigenton fell and that, although (again, according to Wigenton) she may have said "[t]here ain't nothing wrong with him" and "[h]e is just faking," she nevertheless "checked [Wigenton's] vital signs and his blood pressure, *id.* at 2-3. Again, accepting Wigenton's version of the facts supported by competent summary-judgment evidence – as the Court must do in considering Moore's motion, *see, e.g., Southall v. Arias*, 256 F. App'x 674, 676 (5th Cir. 2007) (per curiam) (observing that, "at this stage" of the qualified-immunity determination, a court may not "analyze[] the propriety of [a defendant's] actions based on his own version of the facts") – Moore and Dixon then "left [Wigenton] laying on the floor for several hours, unable to move, until the next shift [came] on duty. It was only

then that an ambulance was called for and [Wigenton] was rushed to Parkland Hospital," Dkt. No. 23 at 3.

At Parkland, Wigenton "was given a series of x-rays which revealed [that he] suffered from extensive additional nerve pain which necessitated [that he] be prescribed new pain medication and given an advisory from [a physician] to return to the hospital if the pain [persisted]." *Id*.; *see also* Dkt. No. 15, Wigenton's verified questionnaire responses, at 4 ("The Dallas County Sheriff Department sent me to Parkland Hospital in Dallas, Texas. Where I had x-rays taken of my head, back and arm. Gave me pain medication. For more information contact Parkland Hospital Dallas, Texas."); Dkt. No. 66 at 184-233 (verified medical records from Parkland pertaining to the hospital's treatment of Wigenton on March 12, 2014, indicating that Wigenton "arrived via EMS after a fall from top bunk" "on backboard and c-collar" and "complain[ing] of right sided numbness and lower back pain").

This delay in treating Wigenton and transporting him to Parkland is not inconsistent with similar aspects of Moore's version of the facts – a version supported by contemporaneous, objective medical records. *See* Dkt. No. 66 at 243-47, Moore's sworn affidavit (citing *id*. at 121-30, verified medical records from the Jail); *see also id*. at 126 (documenting that the nurse found Wigenton on the floor when she arrived; that, when assistance was offered, Wigenton "complained of back and neck pain"; that "[v]ital signs obtained and recorded"; that "Dr. Pavelka was called and notified"; and that "orders [were] received to transfer to PMH via BLS").

In considering medical records placed into evidence by a movant that are

consistent with a non-movant's version of the facts, the undersigned is not crediting a movant's version of the facts to the extent that version contradicts a non-movant's version but is instead relying on documentary evidence that bolsters the version of the facts that controls at summary judgment. *Cf. Comeaux v. Sutton*, 496 F. App'x 368, 372 (5th Cir. 2012) (per curiam) (discussing proper application of *Scott v. Harris*, 550 U.S. 372 (2007): "*Scott* does not abrogate the proper summary judgment analysis, which in qualified immunity cases usually means adopting the plaintiff's version of the facts. Thus, *Scott* does not hold that courts should reject a plaintiff's account on summary judgment whenever documentary evidence, such as a video, offers some support for a governmental officer's version of events. Rather, *Scott* merely holds that when documentary evidence blatantly contradicts a plaintiff's account so that no reasonable jury could believe it, a court should not credit the plaintiff's version on summary judgment." (quoting *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276-77 (4th Cir. 2011); internal quotation marks, ellipses, and brackets omitted)).

Importantly for purposes of qualified immunity, there is no evidence, accepting Wigenton's version of the facts as true, either that any hours-long delay in treating him was because More acted deliberately indifferent – as Wigenton admits that she "checked [his] vital signs and his blood pressure," Dkt. No. 23 at 3 – or that the delay "exacerbated his condition or otherwise caused any substantial harm," *Ralston v. Hurley*, 260 F. App'x 737, 739 (5th Cir. 2008) (per curiam) (citing *Mendoza*, 989 F.2d at 195; affirming district court's conclusion that a plaintiff had "not demonstrated that

medical personnel were deliberately indifferent in waiting nine hours to examine and treat [a] reaction [to ointment] or that the delay exacerbated [plaintiff's] condition or otherwise caused any substantial harm"). Further, Wigenton was monitored and then sent to Parkland, where he was treated by doctors and released back to the Jail. *See Cullum v. Tex. Dep't of Criminal Justice*, 375 F. App'x 417, 419 (5th Cir. 2010) (per curiam) (affirming summary judgment for a prison nurse who "denied [plaintiff] medical care during one of his visits to the infirmary because, without treating him, she ordered him to return to the infirmary at a time after her shift had ended," which resulted in a two-hour delay in treatment that "caused" no "substantial harm" to plaintiff).[2]

Therefore, as to Moore, because there is no evidence of an Eighth Amendment violation based on deliberate indifference, the Court should grant her motion for summary judgment as to her affirmative defense of qualified immunity.

---

[2] *See also Houston v. Dunn*, 487 F. App'x 164, 165 (5th Cir. 2012) (per curiam) ("Houston's assertions, accepted as true, show that he experienced a two-hour delay in receiving treatment, not a denial of treatment, and his condition was treated by a doctor. Thus, he fails to state a claim for which relief can be granted." (citations omitted)); *Stephens v. Scott*, 244 F. App'x 603, 606 (5th Cir. 2007) (per curiam) ("The district court correctly dismissed the claims, noting that the medical records show Stephens was treated within three hours of his encounter with police and that there was no allegation that the delay resulted in substantial harm." (citation omitted)); *Wilson v. Stroupe*, 58 F. App'x 597, 2003 WL 261897, at *1 (5th Cir. Jan. 24, 2003) (per curiam) (affirming the "denial-of-medical-care claim based on [the district court's] findings that Wilson admitted receiving medical treatment two hours after he experienced the chest pains; that the medical records indicated that Wilson was offered an EKG but declined the treatment; and that Wilson failed to describe how he was harmed by the alleged delay in treatment." (citations omitted)).

Dixon

One defendant remains, Officer Dixon, who has neither answered nor otherwise appeared in this litigation. But, given that Wigenton has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915, *see* Dkt. No. 5, that statute provides some guidance as to the disposition of Wigenton's claim of deliberate indifference against Dixon based on his ordering Wigenton to move from a bottom bunk to a top bunk.

Section 1915, in part, provides that "the court shall dismiss the case at any time if the court determines that ... the action ... is frivolous [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). Although Wigenton's claim against Dixon was allowed to proceed on initial screening, *see Wigenton*, 2015 WL 136126, at *5-*6, Wigenton has not alleged that Dixon was on notice that an official at the Jail had assigned Wigenton a lower-bunk restriction at the time that Dixon ordered Wigenton to the top bunk. *See, e.g., Enlow v. Beard*, Civ. A. No. 11-856, 2012 WL 1579498, at *3 (W.D. Pa. Apr. 2, 2012) (claim dismissed where plaintiff merely alleged medical professional ignored his inmate request slip concerning being moved from a bottom bunk to a top bunk, but plaintiff failed to allege that medical professional "actually received the request slip and intentionally ignored it or was in any way aware of [the] situation involving the transfer of bunk status"). Absent an allegation that Dixon "deliberately disregarded [Wigenton's] bottom bunk restriction when assigning him to a top bunk," Wigenton cannot allege that Dixon's actions with regard to the bunk assignment amounted to a constitutional violation. *Orellano v.*

*Pittman*, Civ. A. No. H-15-0259, 2016 WL 1446231, at *5 (S.D. Tex. Apr. 11, 2016) (holding that where an inmate "does not allege that [an officer defendant] knew about his lower bunk restriction, but assigned him to the top bunk anyway," the inmate "could only show possible negligence by [the officer], which does not amount to deliberate indifference and is insufficient to establish a violation of the Eighth Amendment or defeat qualified immunity"; citations omitted).

Therefore, Dixon's nonappearance should be of no concern, because the Court is required to dismiss the claim against him under Section 1915(e)(2)(B). *See, e.g.*, *Moore-Bey v. Cohn*, 69 F. App'x 784, 787-88 (7th Cir. 2003) (per curiam) ("That leaves only the defendants who were never served. In its final order terminating the case, the district court did not explain its rationale for dismissing the three unserved defendants. But we are confident that the court, after having reviewed Moore-Bey's evidence as to the served defendants, carried out its statutory mandate to dismiss a complaint whenever it becomes apparent to the court that no claim for relief is stated or the case is frivolous." (collected authority omitted)); *cf. Edmon v. Chaney*, 160 F. App'x 437, 439 (5th Cir. 2006) (per curiam) ("A district court must dismiss a complaint that it determines to be frivolous. Service upon the defendants prior to such a dismissal is not required." (citation omitted)).

## Recommendation

The Court should grant Moore's motion for summary judgment as to her qualified immunity defense, *see* Dkt. No. 65 & 66, and dismiss the claims against her,

the claims against Dixon, and this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 26, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-16-